CELESTINO M. PETTI, JR. *vs.* JOHN J. LYONS & others.

Plymouth.  November 8, 1979. — April 11, 1980.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Brockton.  Municipal Corporations,* Officers and employees.

The pattern established by St. 1881, c. 192, of successive three-year terms for the office of city clerk of the city of Brockton beginning in January of 1902 was not vitiated by the adoption of a Plan B charter by the city on November 3, 1957, or by St. 1961, c. 511, providing tenure for the then incumbent of the office of city clerk until he should reach the age of seventy in October, 1968.  [559-563]

CIVIL ACTION commenced in the Superior Court on January 25, 1978.

The case was heard by *Keating,* J.

*Cortland A. Mathers* for the plaintiff.

*P. J. Piscitelli* for the defendants.

GOODMAN, J.   The only question raised in this action is whether the plaintiff, Petti, has been entitled during the relevant period to occupy the office of city clerk of the city of Brockton.[1]   The action was brought on January 25, 1978, against John J. Lyons, who occupied that office, and the members of the Brockton city council.   Petti was elected[2] to that office on December 27, 1977, for a three year term until December 26, 1980, by the outgoing city council.[3]   On January 2, 1978, the new city council elected Lyons to be city clerk.   He had been elected to that office initially on November 3, 1971, and reelected on October 29, 1974, for a "term ending December, 1977."   On December 5, 1977, Lyons brought an action in a Probate Court against the then incumbent city councillors seeking to enjoin them from electing a new city clerk.   That resulted in an interlocutory order entered December 23, 1977, based on a stipulation between Lyons and the city council that Lyons would continue to exercise the duties of city clerk until the entitlement to the office was resolved.   Petti was not a party to that action but indicates in his brief that he acquiesces in this arrangement.[4]

The plaintiff's entitlement to the office of city clerk depends on the controlling statutes.   Brockton was originally incorporated as a city by St. 1881, c. 192.   This city charter provided in § 3 that "the municipal year shall begin on the

---

[1] No question has been raised concerning the compensation attached to the office during the relevant period.   Neither the city nor its treasurer has been joined as a party.

[2] The use of the word "elected" instead of "purportedly elected" here and elsewhere in this opinion is not intended to indicate, without more, our view as to the validity or invalidity of the city council's action.

[3] There were seven votes for Petti and four votes for Lyons.   The seven councillors who voted for Petti had been defeated at the municipal election held in November, 1977.   Those who voted against Petti had been returned to the city council.

[4] We note that the defendants in their answer in the case at bar asked that it be dismissed because of the pendency of Lyons' action against the city council.   That issue has not been pressed, and we need not discuss it.

first Monday of January following" the annual election of the
city council. On that day the city council is organized (§ 9)
and, as provided in § 14, "shall annually, as soon after their
organization as may be convenient, elect . . . a city clerk
[and other officials] . . . who shall hold their offices re-
spectively for the term of one year, and until their successors
shall be chosen and qualified." The pattern thus established
for the annual election of a city clerk by the city council upon
its organization in January was consistently followed from
1882 through 1901. That year, by St. 1901, c. 332, the term
of office of the city clerk was extended to three years in those
cities which accepted that statute. As applicable to
Brockton, which accepted the statute on December 3, 1901,
it provided: "In the year nineteen hundred and two and
every third year thereafter . . . there shall be elected or ap-
pointed as required by the charters of their respective cities, a
city clerk, to hold his office for three years from the day of his
election or appointment. . . . Every such clerk shall hold his
office until the election or appointment and qualification of
his successor, unless sooner removed by due process of law
. . .. When a vacancy shall occur in the office of city clerk
the person elected or appointed to fill the vacancy shall hold
the office until the end of the unexpired term of the person
last holding the office . . . ." [5]

Under that statute the city clerk's three-year term thus
began with the election by the city council in January of

---

[5] This was codified in the Revised Laws (R.L. [1902] c. 26, § 15) and
thereafter in the General Laws (G. L. [1921] c. 41, § 12) and now reads:
"In cities which accepted chapter three hundred and thirty-two of the
acts of nineteen hundred and one, the term of office of the city clerk shall
be three years from the date of his election or appointment. . . . [T]he
clerk shall serve until the qualification of his successor unless sooner re-
moved; and a person appointed to fill a vacancy in the office of city clerk
shall hold the office until the end of the unexpired term of his predecessor."

We do not attribute any significance to the changes in phraseology in
the subsequent codifications of this statute. We see no legislative intent in
those codifications to tamper with the term of office of city clerk. See
*Doggett* v. *Hooper,* 306 Mass. 129, 132 (1940); *Scaccia* v. *Boston Elev.
Ry.,* 317 Mass. 245, 251 (1944); *Carter* v. *Burgess,* 323 Mass. 295, 300-301
(1948).

1902 upon its organization at the beginning of the munici-
pal year, with a new election three years thereafter to begin
another three year term. The pattern thus established by
the 1901 statute was followed in Brockton beginning with
January of 1902 through January of 1959; the sequence was
broken on only two occasions, in 1912 and 1953, when elec-
tions were held to fill the terms of clerks who had died.

In accordance with the pattern established by that statute
of successive three-year terms beginning in January of 1902,
the city council would have been expected to elect a city
clerk in January of 1905, and in every third January there-
after until January of 1980,[6] unless the statutory pattern was
vitiated by (a) the adoption of a Plan B charter by the city
on November 3, 1957,[7] or (b) by St. 1961, c. 511, providing
tenure for one Melvin Clifford, the then incumbent of the
office of city clerk, until he should reach the age of seventy
in October, 1968. We think that neither is the case.

(a) We see nothing in the adoption of Plan B (G. L. c. 43,
§§ 1-45 and 56-63) which affects the statutory pattern. In
this respect the case is very much like *Attorney Gen. v.
Loomis*, 225 Mass. 372 (1916), in which the city of Medford
accepted the 1901 statute and thereafter, on the first Mon-
day of January, 1904, a revised charter took effect. At that
point the city clerk, one Joyce, who had been elected in Jan-
uary, 1902, for a three-year term, was reelected, purported-
ly for a three-year term beginning in January, 1904, and
ending in January, 1907. The court held, however (at 375),
that his term ended not in January, 1907, but in "January,
1905, that is, three years from January, 1902". Therefore,

---

[6] See *Attorney Gen.* v. *Loomis*, 225 Mass. 372, 376 (1916): "When a
time is fixed by statute for the election or appointment of an officer, it is to
be presumed that the election or appointment will be made according to
law, although such provision may be directory rather than mandatory,
and the statute as a whole is to be construed on that presumption." See
also *Rutter* v. *White*, 204 Mass. 59, 61-62 (1910).

[7] This date appears in Petti's affidavit; the defendants' brief states that
Brockton first adopted Plan B in 1938, that it remained in effect until
1955, when Plan D was adopted, and that in 1959 Brockton voted to rein-
state Plan B. Nothing turns on this discrepancy.

when he vacated his office in September, 1914 (after successive elections, the last one in January, 1913), and a new clerk, one Winslow, was elected in December, 1914, to serve out Joyce's unexpired term, Winslow was entitled to serve not only until January, 1916, but until January, 1917, in accordance with the three-year statutory pattern beginning in 1902. The court held (at 376) that the unexpired term "then existing [in December, 1914] under R. L. c. 26, § 15 [see n.5], was the three-year period from January, 1914, to January, 1917. [Accordingly], [w]hen the form of election was held . . . in January, 1916, whereby the defendant [Loomis] claims to hold the office of city clerk, there was no vacancy. Winslow was still holding the office by virtue of his election of December, 1914, for the remainder of a term, which would not expire until January, 1917."

Also in the case at bar, the adoption of Plan B by the city of Brockton did not vitiate the statutory pattern of the 1901 statute. While G. L. c. 43, § 11, provides that the adoption of a new plan of government "shall supersede the provisions of its charter," it does not supersede "general and special laws relating thereto" unless they are "inconsistent" with the new plan. We see no such inconsistency between the provisions of Plan B and the 1901 statute (now G. L. c. 41, § 12; see n.5). We therefore read them together. See *Attorney Gen.* v. *Loomis,* 225 Mass. at 375. Indeed, G. L. c. 43, § 18(3), explicitly carries forward the pattern previously established. It provides in the first paragraph for a three-year term and in the second paragraph that "[t]he person holding the office of city clerk at the time when any of the plans . . . has been adopted . . . shall continue to hold office for the term for which he was elected." Further, the provision in the 1881 statute for the organization of the municipal government on the first Monday in January following a municipal election is also found in G. L. c. 43, § 17.

(b) Nor do we see anything which vitiates the statutory pattern in the grant of tenure to Clifford by St. 1961, c. 511, accepted by the city in the election of November, 1961.

That did indeed obviate the need for any election by the city council in January, 1962, January, 1965, and January, 1968. But we see no inconsistency with the continuation of the statutory pattern begun by the 1901 statute, so that when Clifford reached seventy in October, 1968, there existed an unexpired term until January 1, 1971. Thus, Clifford's election on November 1, 1968, after he reached the age of seventy, could not extend, as the city council thought, to October 31, 1971, but terminated in January, 1971, on which date by force of the 1901 statute, the unexpired term ended, and Clifford became a holdover. See *Attorney Gen.* v. *Loomis*, 225 Mass. at 376. Our view that the attainment of age seventy by a city clerk with tenure creates a vacancy calling for an election for an unexpired term is supported by G. L. c. 41, § 19E. This statute in a similar context also views "attaining age seventy . . . of an incumbent [city clerk] who had been given such tenure" as creating a vacancy like that created by "death, retirement [or] resignation" and provides for the filling of the vacancy "as provided . . . by the applicable provisions of any general or special law in effect at the time such vacancy occurs." See G. L. c. 41, § 12, last sentence.

Accordingly, when Lyons was elected on November 3, 1971, to succeed Clifford, that election was for the unexpired term until January, 1974. After that day Lyons held over until his election in October, 1974, which could, however, only entitle him to the remainder of the unexpired term until January, 1977. Thereafter, he held over, and there was no bar to Petti's election on December 27, 1977, to fill the unexpired term which, following the statutory pattern, ran until January, 1980. Thus, as there was no vacancy to fill in January, 1978, Lyons' election at that time gave him no right to the office.[8]

---

[8] Nothing turns on Petti's failure to take the oath when he was elected, in view of the interlocutory order by the Probate Court that Lyons continue to act as city clerk (see 559, *supra*). We do not intend to cast any doubt on the validity of Lyons' acts as clerk while he was occupying the office pursuant to that order.

We, therefore, reverse the judgment and remand the case to the Superior Court to enter judgment declaring that Petti was entitled to the office of city clerk from December 27, 1977, until January, 1980, and thereafter as holdover until the Brockton city council takes (or took) action.

*So ordered.*